We will hear argument this morning in Case 19-1155, Wilkinson v. Dai, and the Consolidated Case. Ms. Zinsack? Mr. Chief Justice, and may it please the Court, under the plain text of the INA, an alien has the burden of establishing eligibility for asylum and withholding of removal. An alien may sometimes meet that burden through his credible testimony, but only when, among other things, the testimony is persuasive and outweighs other evidence of record. Accordingly, it is now common ground that the absence of an adverse credibility determination does not entitle an alien to a presumption of truth. Rather, a reviewing court should consider whether the agency's non-credibility-related reasoning is supported by substantial evidence. These now-undisputed principles demonstrate that the Ninth Circuit erred. In Dai, the agency pointed to ample evidence undermining the persuasiveness of Dai's testimony regarding his family's persecution, including undisputed evidence of his wife's voluntary return to China. The Ninth Circuit rejected the agency's reasoning because it concluded that the absence of an adverse credibility determination entitles a reviewing court to disregard some record evidence and to treat the alien's allegations of persecution as fact. Similarly, in Algaraz, the Court of Appeals expressly relied on the erroneous principle that the absence of an adverse credibility determination permits a presumption of truth, and it applied that presumption to justify ignoring the ample evidence underlying the agency's determination that Algaraz committed a particularly serious crime when he willfully inflicted corporal injury on the 17-year-old mother of his child. The Ninth Circuit therefore subverted the statutory scheme that Congress created. Rather than placing the burden on the alien, the Court presumed the truth of the alien's testimony, and rather than deferring to the agency's reasonable fact-finding, it supplanted the agency's judgment with its own. Accordingly, the Court of Appeals' decisions cannot stand. Counsel, the BIA has to apply the rebuttable presumption of credibility, right? That's correct. Okay. So then the Court of Appeals, in conducting the substantial evidence review, should, it seems to me, do that through the lens of that presumption or take that presumption into account in concluding whether the evidence is substantial. Why isn't that true? If the agency did not address credibility at all, either explicitly or the board can implicitly address it, then the reviewing court shouldn't address credibility either. So it doesn't need to concern itself with the presumption that the board would have had to apply, because it should just be evaluating whether the non-credibility-related reasoning is supported by substantial evidence. So the presumption doesn't enter the picture at all. Well, and then you said explicitly or implicitly. If it's implicitly, I think that raises the Chenery objection that your friends on the other side have stressed quite a bit. And I'd like you to talk about it, because, you know, there was one stray sight that Chenery, in your opening brief, and then you had, I would say, the bulk of the argument on the other side in both of the briefs, or at least a big chunk of it, and it wasn't cited at all in your reply brief. So I'd like to give you a chance to respond to their Chenery argument, which is that you rely on saying there can be an implicit finding, and yet under Chenery, we'd like to make sure that that's something the agency relied on, and I don't think we can be sure of that if they didn't say anything about it. Well, absolutely. We completely embrace Chenery, and as I believe we stated in our reply brief, we agree that the agency's path needs to be clearly discerned. That's what Chenery requires. But if the agency's path, if the board's path is to be clearly discerned, and it's the board, the court is entitled to take that into consideration. It doesn't have to look for magic words. But we think that's largely irrelevant here because we aren't arguing that the board or the IJ relied on credibility. We're arguing that the board and the IJ relied on non-credibility-related reasoning, that reasoning, that the IJ didn't find the O'Day's testimony sufficiently persuasive, that the IJ pointed to a number of pieces of evidence in Albrez's case that demonstrated that he had committed a particularly serious crime, even if, perhaps, his testimony could have been deemed credible. So, again, we just think that this argument about Chenery, we don't disagree with Chenery. We don't disagree that the court, of course, has to review the grounds that the agency decided the case on, but we think that in this case, that means that the court should have reviewed non-credibility-related grounds. Well, how much of an explanation is required for you to conclude that this was an implicit determination, that the alien was not credible? It's not enough, I take it, that they just have, oh, here's some credible evidence on the other side, and we're going to follow that. Is that enough? To determine that the agency based its rejection of asylum on credibility, no. We think that, as this court said in Encino Motorcars, the pathway has to be clearly discerned. But, again, we don't think that the agency relied on credibility here. So we don't think that you have to read the board decision to rely on credibility, but you have to consider whether it's implicit or explicit. We just don't think that the agency was looking at credibility at all. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, would you take a few minutes to walk through the evidence or the findings that you thought, in these two cases, was either persuasive or undermined the credibility of the respondents? Sure. And just to be clear, it's our position that the board did not rely on credibility. That it would, in fact, be acceptable to say, even assuming that this, for the purposes of analysis, that the testimony in both cases was credible, there were other non-credibility related reasons that were sufficient to deny eligibility. And so in Dai, we think that the agency pointed out that even though Dai said that his wife had been persecuted along with him in China, there was evidence demonstrating that his wife had voluntarily returned to China just about two weeks after his family came. So that evidence that his wife voluntarily returned undermines the persuasiveness of his testimony about his family's persecution. And then, Dai was not forthcoming about the fact that his wife and child had returned, and he admitted before the IJ that he wasn't forthcoming because he was worried about admitting that his wife and child had voluntarily returned, demonstrating that he was aware that there was something not quite right about saying, oh, we're fleeing persecution, I want to bring my wife and child to safety when his wife and child had voluntarily returned. And then third, when the asylum officer asked Dai for the real story behind his travel to the United States, he said to make a better life for his child because he didn't have a job. He did not reference the persecution. And I think the fact that he said the real story, he recounted the real story without referencing persecution at all, that too undermines the persuasiveness of his testimony that he needed to stay in the United States because of persecution. So I think in Dai, there are three pieces of very strong evidence that undermines the persuasiveness of the alien's testimony, even if you assume for the purposes of analysis, for the limited purposes of analysis, that Dai testified credibly. Judge Trott seems to think that there isn't much difference, it's not worth even making the distinction between credibility and persuasiveness. What do you think of that? I don't think that's quite right because I think that credibility is a baseline. So credible testimony must be just capable of being believed. And I think that persuasiveness is a higher bar. To be persuasive, you have to have the power to persuade. I think we can all imagine scenarios where someone might be credible but not persuasive. A lawyer might be credible in his arguments but not persuasive. My six-year-old son might be credible when he tells me he didn't eat the cookies, but I may not ultimately find that persuasive if I find crumbs all over his room. So I think there is a distinction between the two terms. Well, it would seem to me that if you saw the crumbs, it would undermine credibility. Well, I think that if you think of credible as just capable of being believed, I can imagine explanations for the crumbs. I can imagine perhaps that the crumbs are there because his sister was framing him. But I don't ultimately find his account persuasive. So maybe it's capable of being believed but it doesn't have the power to persuade. Well, it would seem as though if the crumbs were around his mouth, you would think that that wasn't quite credible. So it seems that the existence of the crumbs could be both credibility and persuasiveness. Absolutely. And we think that evidence often will go to both things and that Congress acknowledged as much because it said that the same considerations go into the credibility analysis. So like consistency with outside evidence is something you can consider in the credibility analysis under 1158B1B3. But then 1158B1B2 says you should weigh credible evidence against evidence of record. So things like consistency can go into both categories. Thank you. Justice Breyer. My question here reflects my concern with the legal mind. The legal mind loves to make distinctions. But sometimes that should be resisted. So we have a simple rule that treats pretty much all agency cases roughly alike. Sometimes there are exceptions. But what a court of appeals does with a factual matter or some matter like this really is look for substantial evidence. End of matter. So if in fact there is a finding, he's credible, then you take that finding and you say, is there with that finding substantial evidence? And if it's the opposite, you say the opposite. Is there substantial evidence? And if the judge doesn't say, Congress tells us what to do. Presume that he's telling the truth, but the presumption is rebuttable. So if nobody says anything, you look at it and you simply say, assuming it was rebutted, we assume that the judge found it was rebutted, and is there substantial evidence? Period. With the assumption that it was rebutted. And that could include, there isn't enough evidence to show it was rebutted. That would just be part of the matter. What we tell the court of appeals is review substantial evidence, follow the statute, as I said, end of case. Absolutely. But the statute does not say to presume that the alien is telling the truth. It doesn't even tell the board to presume that the alien is telling the truth. It doesn't say presumption of credibility. Absolutely it says credibility, but it's now common ground among all of the parties that credible is not the same as true. Well it may be common ground on all of the parties, but it isn't common ground with me. Because I would be quite worried about introducing into administrative law, with thousands of agency decisions, some kind of distinction between credible and truthful. I haven't seen that in administrative law cases, but even were it there, I would be afraid of getting everybody mixed up. I think that Congress introduced a distinction in the text of the Real ID Act. Because the Real ID Act says that testimony must be not merely credible, but also persuasive. The Real ID Act also says that a judge is entitled to weigh credible evidence alongside other evidence. And it says that a judge may ask for corroboration of otherwise credible evidence. That doesn't make sense if credible means true. Why? Because if the testimony is true, if credible testimony has to be accepted as true, it's not clear why you would ever need corroboration. If credible evidence has to be accepted as true... It depends on what it is. What he says is, my wife told me that she wanted to see her dying mother in China. And now, is it credible or not? The judge says it's credible. Now what? If the judge says it's credible, he then has to determine whether that's persuasive. So, is there other evidence that suggests... Oh yeah, persuasive, that's true, that's true. But I don't get the distinction... My point I don't get right now is the distinction between credible and true. My wife told me her mother was dying in China, and that's why she went back. She said, okay, that's the testimony. And you say it's credible. How could it not be true? The easiest way to understand this for me is to think about a scenario where a credible witness says that the light was red, and three credible witnesses say that the light was green. You may decide that, in fact, the light was green. That doesn't mean the first witness didn't credibly testify that the light was red. That's true, because that's what he means. I think the light was red. I saw it as red. And some other people could see it as blue. Depends on the issue in the case. Let's start working this through the court. There are millions of issues that can come up with substantial evidence. But you see what's worrying me? I'm worrying about this court writing some kind of opinion and saying credible is different than true, and before you know it, who knows what will happen. So I think we stay to substantial evidence, period. And we get as close to that as we can, reading into it. Well, it may be too long to explain in a question, but I've made my point. Yes, I think that the court could say that according to the plain text of the INA, Congress did not consider credible to be synonymous with true. Thank you, counsel. Justice Alito? Well, I think you have an argument. The Ninth Circuit said in both cases, as I read their opinions, that the BIA must explicitly say that the alien's testimony is not credible, or else there is a presumption of credibility. I think that's incorrect as to the BIA as a matter of law. But beyond that, I will be truthful. I found the way that you have briefed this case to be extraordinarily baffling. Credible means capable of being believed. Worthy of belief. It doesn't mean that the testimony is accurate. It may turn out that it's inaccurate, but this distinction that you are drawing between credibility and persuasiveness is, I think it's extraordinarily confusing and invalid. If at the end of the day, you conclude that your son really did the cookies, he was not credible, what he said was not worthy of belief, to say, well, he was worthy of belief, but in the end I don't believe him, that escapes me, but maybe you can explain it to me. I think that a problem here is that we often, in common parlance, use the term credible to mean that we believe it. I think it is common to just say, yes, I found him credible. I believed what he said. It's just that we know from the very particular text of the INA that that isn't what Congress had in mind. That in the INA, what Congress meant was credibility is a baseline. It is just capable of being believed. Not that the judge actually thinks that it's true, not that the judge actually believes it, but just that the judge can recognize that it's capable of being true. That's the baseline. The INA itself makes it clear that credibility and persuasiveness are different because it uses both terms. First it says testimony definitely has to be credible, and then it has to be more than just credible. It also has to be persuasive. It has to have the power to persuade. I think that if you look at the text of the INA, it draws the very distinction that we are relying on. If I don't agree with you about that distinction, does that mean you lose these cases? No, it does not. Because, again, we think that what these cases ultimately come down to is that you have to analyze whether there is substantial evidence underlying the reasoning that the board puts forward. Just setting aside the entire debate about what credibility means and whether evidence should be deemed responsive to credibility or persuasiveness, what is very clear here is that the agency pointed to multiple pieces of evidence in both cases that demonstrated that the alien could not meet his burden of proof. Before my time expires, one last question. What should we make of the hospital records? Are they something that we should not consider at all? You should not consider it. The alien did not raise the hospital records in his briefing before the board, and under 1252, administrative exhaustion is required. It's a prerequisite for judicial review. Thank you. Justice Sotomayor? Could you clarify that last point? The medical records were before the IJ, correct? They were before the IJ, and before the IJ the government elicited testimony from a guy to the extent that he had not done anything to authenticate the medical records and that when the government asked what would prevent someone from just writing in information into the records themselves, he said that he didn't know but he hadn't done that. So I think the government was clearly suggesting that there were some authenticity problems with the evidence, and then when the IJ rejected the asylum request. I'm going to stop you there because I don't want you eating up my time, okay? I am very confused, and if I'm confused, I think the rest of the world is confused, and so are my colleagues to some extent. Evidence can be credible but not adequate to meet a burden. People can say certain things and you can still say, yes, I believe he encountered the police, yes, I believe they did something to him, but no, I don't think it rises to the level of persecution. That's a form of a lack of persuasiveness. There are situations in which people can be credible about one aspect of something but not another. This is a perfect case. Dai may have been credible about the persecution of his wife and the fact that they were forced to abort a child, but incredible as to why he left China and whether it was based on the fear of persecution or not, that his wife went back, all of the things you mentioned could be viewed that way. There are any dozen reasons. Are we responsible for figuring out what the BIA meant? If it doesn't make an adverse credibility finding, which wasn't made here, and it's not clear what the basis of their decision was, there aren't simple administrative law principles at play and shouldn't we just remand to say what is it that you found incredible? No. First of all, the text of the INA says, and I'm not going to talk about persuasiveness because I think that's a little bit of a red herring, it says that the IJ has to weigh credible evidence along with other evidence of record. Here I think that it is a very familiar situation in which even assuming the IJ found the testimony of Dai credible and found the testimony of Algaraz credible, he then has to weigh that against the other evidence in the record. If other evidence in the record suggested that, in fact, Dai had not been persecuted, then Dai had not met his burden. Here the IJ pointed to three pieces of evidence that suggested that Dai just hadn't met his burden, even assuming that the testimony was credible. Before you go on with Algaraz, there the BIA did remand, and the issue was whether or not, and the Ninth Circuit found that they couldn't rely on the probation report, presumably because the BIA would have to decide whether or not that witness was available for cross-examination or not. But I'm not sure why we granted certain Algaraz because the Ninth Circuit did what you're asking. It remanded there. No, we aren't asking for a remand. What we're saying is that the court should apply the substantial evidence standard, and because there was substantial evidence in Algaraz, even if you ignore the probation report, the IJ pointed to the fact that it was a domestic violence offense. She pointed to the fact that the elements involved the willful infliction of corporal injury resulting in trauma, and the fact that he had been sentenced to two years, which indicated that the sentencer thought that he had committed a particularly serious crime. So I think you could just look at that and say, that obviously meets the very, very generous substantial evidence standard set out in Section 1252. Justice Kagan? Ms. Simpson, you said that the board had not relied on credibility reasoning in these cases. That's your principal submission. And you said, instead, there were these three pieces of evidence in Dye. There was the probation report on Algaraz. But as you listed those pieces of evidence, they all seemed to me to go to credibility. So let's just take the Dye case. And one of the pieces of evidence that you cited was, you know, he started stammering when he talked about his wife's return, and he was very hesitant to tell the truth, and he looked uncomfortable. And that is classic demeanor evidence going to somebody's credibility. And similarly, the other pieces of evidence, I mean, they all go to whether or not he's telling the truth, which, you know, honestly, join me up to Justice Alito, that if the evidence is related to whether he's being honest in his testimony, then it goes to credibility. So how are all of those pieces of evidence not essentially related to credibility? First of all, I think that, just to be clear, it was also – it wasn't just demeanor evidence. And, in fact, I'm not sure I did refer to demeanor evidence with respect to Dye not being guilty. If you would just answer the main question, Ms. Stinson. Absolutely. So there is an overlap, certainly, between credibility and persuasiveness. Obviously, testimony isn't going to be persuasive if it is not credible, if it isn't even capable of being believed. But it is within the IJ's power to say, look, I think there were inconsistencies in his testimony, but I still think that he is capable of being believed. So I'm not going to say you get an adverse credibility. In the end, Ms. Sinseck, did the board believe that Mr. Dye was lying? I don't think the board said that he was lying. What it said is there's other evidence that suggests, ultimately, that the facts haven't been established here. Well, how would the facts not be established if he was telling the truth? He could believe that he was telling the truth. He could very much believe that all of these things happened as they were, as he says. But just as somebody could believe that the light was red. But ultimately, there are facts that strongly suggest that isn't what happened. The light was green. The question in the Dye case is all about whether he got beat up because of his opposition to the so-called family planning policies of China. And if he did get beat up for that reason, then he has a well-founded fear of persecution under the regulations. And are you saying that the board said that he was mistaken as to whether he got beat up? I am saying that the board did not think he had submitted sufficient evidence to meet his burden of proof. I know, but how did the board reach that determination unless the board decided that he was lying? It looked at other testimony of his. And remember, there's no adverse credibility determination, so it's looking at all of his testimony. And it said that he had also credibly testified that the real story behind his travel to the United States was that he wanted a better life for his daughter. Well, then that suggests that his other testimony was a lie, was false. And that is inconsistent with the presumption of credibility. There's no extraneous evidence in this case at all. It all relies on whether Dai is telling the truth or not. And there's a presumption that kicks in, and you're saying, well, you're not grounding your argument on whether that presumption was overturned by the board. Instead, you're saying that the board presumed he was credible and then did something else. But there's nothing else to be done in the Dai case. He told a story. It's an honest, true story, or it's not. If the court thinks that all of the evidence that the agency pointed to is only relevant to credibility, then I think it would necessarily dictate that the board and the agency and the IJ didn't think he was telling the truth. Then I think the only mistake that was made here was that they didn't use the word credibility. Thank you, Ms. Sinsek. Justice Gorsuch? Good morning, Ms. Sinsek. I'd like to explore a slightly different point, and that is where does this presumption apply? In the government's opening brief, it took the position that it applies only in appeals to the BIA and not in court. The reply brief didn't appear to me to press that point with the vigor of the opening brief, and I'm just curious what the government's position is now. The government's position remains that the presumption applies before the board and not before the court. As we explained in our reply brief, we don't think that we need to get bogged down in that, because here we just don't think that credibility is the issue. But we continue to believe that the clear language of the statute makes the presumption applicable before the board. Let's suppose you're right about that just for the moment. What difference does that make? If a court of appeals has to review for substantial evidence and reasonableness, doesn't it have to also inquire as to whether the board reasonably treated the presumption? Yes, and if credibility became an issue, which, again, we think that the court should have reviewed the non-credibility-related grounds that the board relied on. But if credibility became an issue, yes, it would have to say, we think the board implicitly found that Dye was not credible, and we think there was sufficient evidence that the presumption of credibility was overcome. And here I think, frankly, there is, because- Let me just stop you there. I'm sorry, but you say implicitly, and I guess I'm wondering how a court could decide that the board acted reasonably based on an implicit credibility determination when the statute seems to require the board to make an explicit one. I don't think the statute requires the board to make an explicit credibility determination. The only thing the statute says in that regard is that if the fact finder or if it had not made an explicit adverse credibility determination, the board should apply the presumption. It doesn't say- Okay, so we don't have an explicit finding from the IJ. Why wouldn't it be unreasonable, therefore, for the board to, let's just assume for the moment it did, implicitly reject the credibility of the witness? I think you have to look at this against the backdrop of what the circuits have considered an explicit adverse credibility finding insofar as the Ninth Circuit, in the majority opinion, explained. They haven't even credited things where the board has said that he doesn't seem quite credible. Okay, but let's assume it's implicit, as your first answer seemed to suggest. Could the board reasonably affirm an IJ based on implicit credibility determinations, or would that be something the Court of Appeals would have to reverse in light of the statute? If it found the presumption overcome, it could certainly affirm an IJ based on an implicit credibility determination, because, again, the statute doesn't apply an irrebuttable presumption. It applies a rebuttable presumption. So if the board looked at the IJ and said, you cited three major pieces of evidence that show that Dye was not credible, you seem to have forgotten to make an adverse credibility determination. That would, of course, be acceptable. I certainly understand the reluctance of immigration judges and trial judges everywhere to make adverse credibility determinations expressly. It's an uncomfortable task. But on the other hand, what's so difficult about requiring the government to do just that? I mean, if you point to, as Judge Collins did, eight different problems with Dye's testimony, for example, or the probation report in the other case, it surely wouldn't require much more than a few words to express what's implicit. Well, I think it would be going beyond what Congress stated, because Congress in 1252 said that the courts have to uphold agency determinations unless any reasonable fact finder would be compelled to reach the opposite conclusion. So I think it would be flouting Congress's plain text to require something that Congress did not. Thank you. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Ms. Synstad. On the statutory language, if I could start there and pick up on Justice Gorsuch's questioning. It says, if no adverse credibility determination is explicitly made, and you've said that's by the IJ, the applicant or witness shall have a rebuttable presumption of credibility on appeal. And I just want to know what work the presumption does on appeal. In other words, I would think the presumption does work when there's no other evidence at all, other than the testimony of the applicant, and there hasn't been an adverse credibility determination. Then you have that presumption of credibility on appeal, and presumably that will sustain the burden. But you can tell me if that's wrong. If there's any other evidence, however, then the presumption, I guess, drops out, or the case becomes like any other case. Is that right? Is that your argument? Or how do you think about that? I mean, I'm certainly willing to go with it. Why is that wrong? You don't think that's right. What's wrong with what I said there? Well, I think that if the IJ has not made an explicit adverse credibility determination, then the board needs to determine whether their presumption has been overcome. And I think that could occur in cases where there is other evidence. And the way I think about it is if, for example, the IJ said, I'm not going to address credibility, but I think that the testimony is not persuasive or I think other evidence demonstrates this isn't correct, you could say any number of those things. And the board could evaluate it and say, well, we don't accept the grounds that the IJ relied on, but we think he's probably not particularly credible. And I think there the presumption would kick in and say, no, you can't make that finding. You actually need to either determine whether the presumption has been overcome or remand to the IJ to make a credibility determination. What's the point of this provision, do you think? I think exactly what I just said. I think it prevents the board from just assuming that the alien was not credible. I think that if you look at the concurrence in SMJ, which is the board decision referred to in the legislative history of the Real ID Act, there was a concurrence there that was very concerned that adjudicators might just assume aliens are lying because they're seeking asylum because it's to their benefit. And I think the presumption ensures that the board doesn't make that negative inference, that it actually has to point to some evidence to rebut the presumption of credibility. Then on the terminology, there's a lot of confusion, obviously, inherent in these terms, but I would think the way you would approach it with a witness's testimony is you would ask, is the witness lying first about whether the light was red or green, for example? The witness knows it was red but testifies it was green, so the witness is lying. That's the first inquiry, is the witness lying? Then the second inquiry would be, even if the witness is not lying, is the witness mistaken or wrong? They truly believe the light was red, but in fact the light was green, the other evidence shows. Now, that's how I usually think about it, and I'm curious how you think that fits into the term credibility. In other words, is the witness lying? Even if not, is the witness mistaken? Yes, I think that that's a good way. I would just give you the terms of the statute. So I think the first question is, is the witness credible? Is he even capable of being believed, or is it just obvious that he's lying? And the next question is, well, is the witness persuasive? Is there a possibility that, for whatever reason, he's mistaken? Even if he's capable of being believed, the testimony just doesn't have the power to persuade me that the light actually was green. And won't a finder of fact often say, I'm not quite sure if they're lying, but I still don't think they're correct? They're mistaken about the light being red or green. I'm not quite sure they're lying, but they are mistaken, given the other evidence in the record. Absolutely, and again, you just have to think about the scenario where you have two credible witnesses that are testifying to conflicting facts. You can say both those witnesses are credible, but I think only one of what they're saying, only one of the witnesses is telling the truth. And I think that's a very familiar exercise. Good morning, Ms. Finzek. I have to say, join me up with Justices Alito and Kagan. I'm baffled by the distinction that you're drawing between credibility and persuasiveness. And it's not actually consistent with the way that I've seen cases come up for review in the Court of Appeals from IJs who make adverse credibility determinations. The ones I've seen, they've essentially been equivalent to saying that the witness is lying. This fine distinction between believable and believed just seems nitpicking to me. As Justice Kavanaugh was saying, it seems to me more like credibility refers to, are they lying? And then persuasiveness, as Justice Kavanaugh was suggesting, points to other reasons why you might not believe them. Thinking about your example with the child and the crumbs, I was thinking, as you talked about an example about my child, I come home and find the child hysterically crying, and she says, someone was beating at the door. I think somebody was trying to break into our house. And I can believe her. I don't think she's lying. But then my neighbor says, yeah, I saw it was the UPS man. So I would not find her story persuasive, not because of credibility, but because there was other evidence that showed she was not, in fact, in danger. It was the UPS delivery man. So I don't think that you seem to be leaning heavily on the fact that the statute uses both the words credibility and persuasiveness, and I just don't see it. So I want to ask you, what's wrong with seeing it this way, that the IJ makes a determination about credibility, and that has to be expressed. And when it gets up to the board, there are two ways in which the board might have to confront this presumption. Either the IJ actually found the alien credible, and the board disagrees, in which case it has to confront the presumption and explain why it thinks the evidence rebuts that presumption of credibility. Or the IJ might not have done a good enough job in making an adverse credibility determination explicit, as the statute requires. And then still, the board has to presume credibility and then explain why it thinks the presumption is rebutted. If the board offers such an explanation, once it gets up to the Court of Appeals, the Court of Appeals isn't applying any kind of presumption. The Court of Appeals is just reviewing it for substantial evidence and seeing if the board's explanation, and the board has to show that it understood what presumption should be there, whether the board's explanation was rational and substantial evidence supported its determination that the alien was not telling the truth. Is that an okay way to think about it? And how is that different from your way? I don't think it is. It's obviously a little bit different from the way that we think about it, because we think it is coherent and, in fact, what the statute dictates, that an alien's testimony can be credible but not ultimately persuasive. But I also don't want to resist it too much, because I think we may just come out the same way. The key thing here is that under 1252, a reviewing court should not overturn an agency's findings that are supported by substantial evidence. And what 1252 does not say is, and they have to have appropriately labeled that evidence as going to credibility or persuasiveness or sufficiency or something else, it just says you have to look, and as long as any reasonable fact finder could say that there is evidence in the record that supports the agency's determination, it has to be affirmed. So if you think that what happened here is the IJ and the board should have said the word credible and didn't, then I still think that leads to upholding the agency's determination. I mean, this court has said that judicial review is not a ping-pong game. We don't just bat back and forth. Let me just interrupt you to sneak in one more question. Is it your position that IJs actually on the ground proceed in the way that you're suggesting, drawing this distinction between someone could believe you but I don't, and just using credibility in the way that Justices Alito and Kagan and I have been using it just as it means truth? I think there's a basic problem, because the Real ID Act only came into existence in 2005. And before that, there was a focus on credibility alone. And the Real ID Act introduced the fact that the IJ has to be satisfied that it's not just credible testimony but also persuasive. I'm not sure on the ground that IJs have fully accounted for that change in the law, but that doesn't mean that it's not the law. Thank you. A minute to wrap up. Ms. Chinstack? Sure. I mean, in the end, I think that what we're seeing here is there's general agreement that there was plenty of evidence in both cases. Indeed, one might say substantial evidence in both cases demonstrating that the alien was not eligible for asylum or withholding of removal. And the only question here is whether the evidence should have been labeled as persuasive or credible or some other way. I think the statute makes very clear that it is within the IJ's right to say that testimony is credible but not persuasive. The IJ, after all, has to be satisfied that the testimony is persuasive. But even if you doubt that, under 1252, the agency's determination has to be upheld so long as any reasonable fact finder would not be compelled to reach the contrary conclusion. Thank you. Thank you, Counsel. Mr. Katyal? Thank you, Mr. Chief Justice, and may it please the Court. The government petitioned for certiorari claiming courts should not enforce a presumption of credibility when reviewing board decisions. But now, as they said to Justice Gorsuch, they accept that this presumption does apply in federal court. So all we are left with is a purely fact-found issue of whether, in this specific case, once the presumption is applied, the board had substantial evidence that a particularly serious crime was committed. I'm not sure that this question alone would be cert-worthy, but in any event, the answer to that is easy because the board provided no reasoned explanation for rejecting Alcarez's testimony, which the government admits had to be presumed credible. The government made a remarkable concession that for the legal standard that Encino Motorcars requires that, quote, the pathway must be clearly discerned, to use Ms. Sinzdak's words. Here, that's impossible to discern. As the Court of Appeals found, the board's decision was based on, quote, a probation report which directly contradicts Alcarez's testimony. If that court were to ask, why did the board believe one account and not the other, it'd have to guess, was it based on a reason at odds with the record, arbitrary, or something else? Did the immigration judge overlook the only eyewitness account from the mom, which is curiously never mentioned by the IJ or by the board? Did he misunderstand Alcarez's no-contest plea? Did he think Alcarez agreed with the probation office report, even though that report was written months after the plea? If this court is to endorse the application of the government's rule today, it's that a new basement-level standard for the quantum of reasoning an agency must offer to support its factual findings, one that would radiate far beyond immigration throughout the administrative state. This court should decline that invitation and affirm. Mr. Cotfield, just to be clear, sort of starting out here, the question presented is whether a Court of Appeals may conclusively presume that an asylum applicant's testimony is credible and true if there's no explicit adverse credibility determination. And your answer to that is no. The Court of Appeals cannot conclusively presume that the applicant's testimony is credible and true. Is that right? Yes, to a point, Your Honor. As our brief in opposition said, it is to presume the testimony is credible, but there is sometimes a distinction with truth. And, you know, I think Justices Alito and Kagan are getting at the fact that there's a massive overlap here, and we don't push that point too much. But there is at least some distinction, and so those words, true, are the part in which we would disagree with, that we find a problem. And I also understand your position to be that there are no magic words here. The BIA does not specifically have to find that we think – doesn't have to have an explicit adverse credibility determination. Is that right? There are no magic words to create that express adverse credibility determination. There is to be one in order to have a rebuttable presumption. And once there is that rebuttable presumption, Mr. Chief Justice, we do think it makes the persuasiveness inquiry very hard, because of cases like Greenwich Collier's, which say that an agency can't, quote, stand mute and disbelieve credible evidence. Right. So what it comes down to, in your view, is simply how much of an explanation the BIA is required to provide before the Court of Appeals can say that it implicitly made an adverse credibility determination. I think that's largely right. So our point is, as the case comes to the board, there was a rebuttable presumption of credibility. The board then had two options. One – and I think they were laid out by Justice Barrett – one is to say, I rebut that. It's actually not credible. The other is to make a persuasiveness finding and to say, you know, I believe it. You know, it's capable of being believed, but the evidence is outweighed. Thank you, counsel. Justice Thomas? Yes, Mr. Cotdiel. I'm a bit confused. You say that there's no magic word requirement. But what if there is just the board makes a choice or the IJ makes a choice between two sets of evidence? Isn't it implicit that it found one more credible than the other? Justice Thomas, we don't think that you can just implicitly rely on a persuasiveness calculation, particularly when the evidence is presumed credible. I think that's what I'm getting at with Greenwich Colliers, which is cited at page 39 of our brief. And indeed, Congress has this whole thing in the Real ID Act about credibility, about the need to make express adverse credibility findings. It would make hash of the statute, make hash of Congress's work to accept, I think, what the government is saying here, which is, hey, as long as you've got something that might implicitly be read one way, that's enough. I mean, that's not what this court ever accepts in the administrative law context. You wouldn't accept it for the SEC or the EPA, and I certainly don't think you should accept it here. But is your argument the argument that the Ninth Circuit used? Our argument, we read the Ninth Circuit differently than the government. We read it to basically be saying there was a presumption of credibility that came into the board, and the board then had to explain why it accepted one contrary view as opposed to another. They're diametrically opposed. And the IJ's opinion is like a bad law student exam, Justice Thomas. It lays out the facts on both sides, but it never applies them to explain how it resolved this case. And that would be bad in general, but particularly when there's a presumption of credibility coming in, and Greenwich Colliers says you can't as an agency just disbelieve that credible evidence, that's where the agency fell down. Thank you. Justice Breyer? Good morning. I think you and everyone seems to agree with this. The Ninth Circuit's wrong when they say that even though where there's no finding, you assume that the person is credible. That isn't what the statute says. It says where there's no finding, you presume, not assume. And so the question is, is that what the agency did? Did it presume it? No. Well, maybe, because they might have assumed that the presumption was rebutted. So we have a question on appeal. They didn't write whether it was rebutted or not, but that's true of district court judges when they make a lot of findings that are appealed. They don't always have to write. It could be the situation. It could be implicit from the record that they assumed that it was rebutted. Lower courts or the agency thought the presumption was rebutted. Now, you don't have to write about everything that an agency doesn't have to and a district judge doesn't have to. So how do we deal with that? I think, Justice Breyer, we deal with it by recognizing first that Congress in Section 1252 expressly enabled judicial review of agencies and used the substantial evidence standard. The government even admits that that's the standard. Then, as part of that standard, as T-Mobile says, courts cannot exercise their duty of substantial evidence review unless they're advised of the considerations underlying the action under review. And the problem is, in this case, and this is a representative case, as our brief in opposition says, they haven't actually told you how they resolved the problem. They haven't, but do you think they have to write an opinion where district judges all the time are making rulings where they don't write opinions? And suddenly an administrative law judge has to write an opinion on this matter, on every matter? Is this different from any other matter? I think in all agency review contexts, as opposed to district court circumstances, yes, there has to be a reasoned explanation. And that's not detailed. Why should that be? I mean, why could you not infer from the situation what the IJ thinks? Whereas we do infer from the situation what a district judge thinks. Because, Justice Breyer, for seven decades, the Chenery Rule has required more and said it's not rational basis, that there's a worry about agency decision-making. And it's not some extreme, extreme standard, as, you know, then-Judge Gorsuch's opinion and Lin Yang said. You know, it's pretty easy to meet this standard. You just got to say something, or Judge Colleton's opinion, and sing. Justice Alito? I don't know that I have very much to add here. The Ninth Circuit said, and I'm quoting from the opinion in your case, we have repeatedly held that where the BIA does not make an explicit adverse credibility finding, the court must assume that the petitioner's factual contentions are true. I understand you now to acknowledge that that was an inaccurate statement of the law. Isn't that right? That's correct. As our briefing opposition said, yes, Justice Alito. Okay, so the BIA can implicitly find that the presumption was rebutted. And then the question does seem to come down to whether it is permissible to read the BIA's opinion as sufficiently stating that the board found that the requirements for asylum were not met, whether they provided a sufficient explanation. They don't have to do it explicitly, but they have to provide an explanation. That's the question, right? So, Justice Alito, that question is different than the first one you asked me, because you're saying, could it be done implicitly? And I think seven decades of administrative law require a reasoned explanation. I could imagine it could be done implicitly. They don't have to say and come out and say exactly all of their handiwork, but they have to show enough to explain what they did. And as I said in my opening, here you just don't know that. Like, for example, there's only one eyewitness to this whole account. It's nowhere mentioned in the IJ report or in the board's decision. Well, the board could do this, could it not? The alien testified to this. There were other witnesses that testified to this. Another witness testified to this. Without going through each witness and saying, we believe A, we disbelieve B, we believe C, they simply say, these are the facts that we find. That would be sufficient, wouldn't it? Well, I'm not sure that that is the reasoned explanation that is required. I mean, you don't even have that here, but I think just to lay out the facts and then just say we decide on one, I mean, Congress created judicial review in 1252 for a reason. It's got to be meaningful. And it's not meaningful if a litigant like Alcarez can't even make heads or tails of what the decision actually said. And, you know, we've heard many different versions of what we think the IJ and the board did, or the government thinks it did. That makes it impossible to appeal. And remember, these are social counsel. Mr. Patel, I have a basic problem in this case, starting from where Justice Alito did, which is you've admitted the Ninth Circuit applied the wrong presumption. It seems to me that then the only thing that happens is a remand to see exactly what they intended or didn't intend. I do have a problem in this case believing that this ruling was on anything other than credibility, i.e., that the IJ and the BIA didn't believe your client with respect to the nature of the assault. Am I correct in that assumption? I don't think so. So, first of all, Justice Sotomayor, we don't think that the Ninth Circuit actually held what the government says. Our point is if you read it that way, then, yes, it's got some stray extraneous language. But remember here, the Ninth Circuit remanded this case to the agency because of hearsay. Answer, please, the question I ask most directly, which is can the BIA's decision be upheld if it found this person credible as to his explanation as to what happened? If it found Alcarez's testimony credible, then I don't think it's possible, because Alcarez's version of events, which is diametrically opposed to the probation officer report, is he did it to protect his daughter, and there's only one incident of violence, one punch to the face. And that alone wouldn't be the, quote, particularly serious crime necessary to make someone ineligible for relief from removal. So I think that goes to the basic question. Without an adverse credibility finding or a statement that they did not believe or didn't credit his explanation, then without that finding, you can't uphold their judgment. Is that your argument? Well, I think you could either do it on credibility or on persuasiveness. Again, it wouldn't, as Justice Gorsuch said, require any sort of magic words or an onerous burden, but you'd have to in substance to either rebut the presumption of credibility or show that the evidence wasn't persuasive. It's got two options. All right, thank you, counsel. Justice Kagan? Mr. Katyal, this is a pretty simple case, right? There's basically two pieces of evidence in it. Mr. Alcarez says, this was nothing. I didn't really seriously beat my girlfriend. I was trying to protect my daughter. And then on the other hand, you have a probation report. So it comes up to the board, and because there was no finding, it comes with a presumption of credibility. But the board is now looking at the probation report and saying, generally, we believe probation reports rather than convicted criminals with incentives to lie. And that's exactly what we're doing here. We're going to believe the probation report that this was an extremely serious crime. So isn't the surrounding circumstances, and then you look at this case, and basically it just comes back down to, do you believe Mr. Alcarez or do you believe the probation report? Isn't it just clear that the board believed the probation report rather than Mr. Alcarez? And if that's so, isn't it clear that essentially the board decided to rebut the presumption? Justice Kagan, the government doesn't even make that argument, and I think because your hypothetical demonstrates why. Because there is no language anywhere in there that we don't believe criminals or anything like that, or we tend to believe probation officers or the like. Indeed, had that language been in there, that would enable precisely the kind of meaningful judicial review Congress put in 1252. As it stands, we have to guess whether those are the rationales, something else that the government has offered are the rationales, and the like. That's the problem. But aren't you just asking, like, I mean, it seems as though you're just asking for one more sentence, which is, or even half of a sentence. We believe the probation report rather than Mr. Alcarez because. And what would that because look like, and why is it necessary? The because could be any of the reasons that Judges Colleton and Gorsuch did in Singh and Lin Yang. So they could say, you know, we didn't find that person credible on the stand. There was an agitated demeanor. There were inconsistencies in the testimony. They admitted filing false documents. Those are all the kinds of rationales that are given in case after case. The problem here is there's nothing. And if you accept nothing here, it's going to be the rule, not just in immigration cases, but in other cases. Justice Gorsuch. Good morning, Mr. Couch. I'd like to pick up where Justice Kagan left off. I'm struggling to identify any other ground on which the D.I. could possibly have acted other than it believes a probation report rather than your client. And if that's the case and no magic words are required, what's what's left? Justice Gorsuch, it's not rational basis review. It's substantial evidence review. So we're going to look to what the agency actually said. And let me give you two possibilities that would answer this. One is, did the I.J. and the board just overlook the only eyewitness account, which is from the mom? It's just nowhere in the I.J. or in the board's report. And remember, this is an I.J. judge who's a bit worrisome. I mean, he blew off the entire statute requiring cross-examination. It's an express statute by Congress. So, you know, if he could ignore that, he could ignore, you know, the fact that there was the mom's testimony. And then the other way of thinking about it, just a second example, is, you know, Alcarez's no contest plea was made three months before the probation office report was written. And there's a lot of reliance on what that report said. Indeed, we just heard Justice Kagan talking about that. But Alcarez never agreed to any of that because his plea preceded that by three months. We have no idea whether the I.J. understood that or the board understood that. And, indeed, before the board, we actually gave them a chance to correct their mistakes and to say, you know, provide that specific cogent reasoned explanation that Justice Worsitz, you called for in Lin Yang. The board, the committee, ICE filed a one-page answer before the board. And the board, of course, did nothing. Zero plus zero is still zero. Thank you. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Mr. Katyal. On the statutory language, repeat a question I asked your colleague. It says the applicant or witness shall have a rebuttable presumption of credibility on appeal if no adverse credibility determination is explicitly made. I think the purpose of that was that if the only real testimony in the record is from the applicant and the I.J. did not say, I think the applicant is lying or make an adverse credibility determination, it would not be open to the BIA to do that. But, and this is what I want you to focus on, by using the phrase rebuttable presumption, I think Justice Kagan was talking about this and Justice Gorsuch, if other evidence comes in, it's not just the applicant's testimony and you have nothing else. Other testimony comes in, then you just do normal substantial evidence review as the reviewing court, and if the BIA has explained we think the other evidence is inconsistent with the applicant's testimony and the other evidence is more persuasive or we choose to believe that other evidence, then that rebuts the presumption. Justice Kavanaugh, we agree that the board absolutely could rebut the presumption. The problem here is the board expressly, quote, adopted and affirmed the I.J.'s findings, which didn't have that credibility determination. And so the board never discussed credibility or gave any reason to find Allker as non-credible. You know, nothing like what Justice Kagan was getting at about how we don't believe criminals or we believe probation office reports. Just put aside this case, and I understand why you're focused on this case. Is that how you think the statutory provision operates? We do think that the board absolutely can rebut the presumption. They've got to do so with some work, and, you know, a circuit court sitting on 1252 review would look for a reasoned explanation. So it's got to explain what they're doing and have some reason behind it, just as in any administrative law context. That's all. It's not an onerous standard. It's just one that the government can't meet here. That's helpful. Thank you, Mr. Katyal. Justice Barrett? Good morning, Mr. Katyal. You said, I just want to be sure that I understand the ways in which your position is distinct from the government's. So it seems like you don't quite buy the government's argument that credibility simply means is this person capable of being believed rather than I believe them. But I did hear you earlier say something about something can be credible and not persuasive on the grounds that you don't believe the person. Can you just tell me what you mean by credible? How do you understand it? Credible is capable of being believed, and sometimes, and rarely, there will be a difference between credibility and persuasiveness. You know, for example, if someone says, you know, I'm worried if I go to Mexico that I'm going to be beaten up, and the judge doesn't think he's lying, thinks it's genuine, but as a result of country testimony by the State Department and others, just thinks that's not right. You know, those are the types of circumstances. Here, as I was saying to the Chief Justice, when a case comes in with a presumption of credibility, Greenwich Colliers says, you know, that really heightens the burden on the agency to explain why. But, Mr. Katyal, in the example you gave, I think actually then you and I might be interpreting it the same way because that's kind of like my child and the UPS man example. On that example, it's not that the person was lying. It's just that they're mistaken based on other outside evidence. So you're right. They may be credible, but not be persuasive. But that's consistent with credibility referring to the truth or falsity of the testimony, is the person lying or not, right? It is consistent. The one point I'd make there, Justice Barrett, is when you're answering that second question about whether other evidence outweighs or disproves it, it's got to be a reasoned explanation. The agency just has to explain what it's doing clearly and provide some reason for it. But the presumption wouldn't apply then before the board, right? Because in that instance, it's not that the board, or I guess would it? Because it's not that the board is saying, you know, that there would be a presumption that the person wasn't lying, right? Justice Barrett, this isn't a presumption in the air. It's a presumption about credibility. And so when Congress uses those words, it picks up preexisting cases like Greenwich Colliers, which say that you can't disbelieve credible evidence without a reasoned explanation. So we don't doubt that the agency could provide that reasoned explanation. And, indeed, they almost always do, as the MEP briefs say. IJs are trained to do that. They just didn't do it here. And it would be very dangerous for you to accept on this record this application of the government. Thank you, Mr. Katyal. My time's up. A minute to wrap up. Mr. Katyal? Thank you. My central point, as I was saying to Justice Breyer, is that this is a standard agency case. The agency had one job, and it fell down on it. Justice Breyer was worried about this being too burdensome, but this isn't hard to meet. Indeed, it's how immigration judges have operated for decades, as I was just saying to Justice Barrett. It requires no magic words, just a reasoned explanation, which this court in Jutland has already unanimously said applies. And, Justice Alito, you had suggested that the record here was enough. And if you were sitting as a rational basis court, I think you could find something to justify what the agency did. But that's not the test. Here, as the Ninth Circuit said, there were two contradictory accounts. The agency just had to explain why it believed one of them. And the agency always has two bites to do so at the IJ and board stages. Here, the IJ wrote a detailed opinion, except in the one place where it matters. It's reasoning. It tells us everything else but that. And you wouldn't accept this reasoning, or lack thereof, if this were the SEC or EPA. You shouldn't accept it here. Thank you, Counsel. Mr. Zimmer? Thank you, Mr. Chief Justice. The parties have no real dispute, as this argument shows, as to the legal question on which this court granted certiorari. And at least in Mr. Dye's case, the Court of Appeals applied the precise legal framework that all parties accept. The court did not presume Dye's credible testimony to be true, but held that the record compelled the conclusion that Dye's testimony, if credible, was persuasive. That case-specific conclusion was plainly correct. Mr. Dye's eligibility for asylum and his entitlement to withholding turn entirely on whether he was, in fact, persecuted based on his resistance to the Chinese government's forced abortion of his child. Mr. Dye testified in great detail about that persecution and submitted significant evidence corroborating his testimony. The government agrees that the agency here made no adverse credibility finding. In other words, the agency did not conclude that Dye lied. And there is simply no evidence in the record that would support a conclusion that Dye was not lying, but was nevertheless somehow mistaken about the severe persecution inflicted on him. This court should therefore affirm. Counsel, first, did Mr. Katyal say anything with which you disagree? No, I don't think he said anything that I disagree with. Okay. On the remand question, it seems to me that the bottom line is that in that respect, you are insisting on magic words. In other words, the court of appeals was all right not sending it back because there was an absence of those words in the BIA decision. Is that wrong? I think it is wrong. I guess I'm not sure what magic words we would be requiring. I think that ultimately the way that the statutory presumption works is sort of as a gap filler as to credibility in the face of administrative silence. And so whereas here, the agency accepts the testimony as credible and moves on to persuasiveness, then it is under the statute taking the testimony as credible, and there's nothing left to do as to credibility. I think that gets at the question you were asking, but I don't think that there's anything specific the agency would have to say. It just has to follow what the government agrees is a clearly discernible path as to finding the presumption rebutted. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, like Judge Trost below, I have difficulty with the distinction between persuasive and credible, and it just seems like a false dichotomy to me. But can you have two points of view, both of which seem credible, but yet one is not persuasive? Sure. I mean, I think this gets at Justice Barrett's example of the UPS delivery person, where you can have two narratives that are both credible but one of which turns out to just be incorrect based on other evidence of record, that somebody can be credible and yet mistaken. And I think that's sort of where the distinction between credibility and persuasiveness comes up, that ultimately somebody can be testifying honestly, in other words, not perjuring themselves, not lying, but ultimately just be wrong. And I think that's really the key distinction that the statute is drawing in recognizing that you can have credible testimony but nevertheless sort of just be wrong. Do you think that in this case, in your case, there's quite a bit of evidence that seems to undermine both respondents' credibility, or at least could go to credibility and to persuasiveness? What words are missing in this opinion, the IJ opinion, to your way of thinking? Well, I guess it's not so much magic. I mean, it's very clear in this case that the IJ did not find Mr. Dye to be not credible. In other words, it never concluded that he was lying. And if you look at page 164A of the petition appendix, the board said this explicitly, that the IJ had not made any adverse credibility finding, and the board adopted and affirmed that decision. So I think that to the extent the evidence goes to credibility, and we think that it very clearly does only go to credibility, well, the IJ never made, neither the IJ or the board, ever made an adverse credibility finding. As to persuasiveness, I actually strongly disagree that any of the evidence that the government relies on, that the agency relies on, does in fact go to persuasiveness. You know, the government primarily notes the fact that Chin, Dye's wife, and their daughter went back to China. But they were in a completely different situation than Dye was, in the sense that they faced very low risk of at least any sort of persecution in the short term, and had very strong reasons to go back, whereas Dye faced very real risk of persecution in the short term. The police had in fact come looking for him in the few months after Chin and his daughter returned to China, and had very little reason to return immediately, because he had been fired from his job after resisting the forced abortion of his child. And so Chin and their daughter were, God, sorry. Justice Breyer? Yes, two things. One, as I read the Ninth Circuit, I thought there was language there that says something like the following. Where there is no adverse credibility determination in the agency, a reviewing court of appeals must assume that the statement is credible. That couldn't be right, because after all, the agency is told that if there is no adverse credibility requirement, there is a presumption. And so agency, you can say, the presumption is rebutted. Am I right about what the Ninth Circuit is saying, or not? I think you are right about what the Ninth Circuit is saying. Well, then that isn't right, because it would be weird to have an agency which says, We can write down the words, in this situation, we find the presumption of credibility rebutted, because, with the most convincing reasons ever. And they would have to accept that in a court of appeals, or you're going to get, it's not going to make sense. That's my first problem. I think we have to say that. But the more serious problem, which I really don't understand thoroughly, and I'm trying to work out, is what happens, no adverse credibility determination. Now there is a presumption. The IJ and the agency think it's, possibly think it was rebutted, that presumption. Now do they have to write those words? We find it rebutted. Or, are they implicit? Can a reviewing court ever find them implicit? And if so, when? What words would you write in an opinion, if you believe the latter, you don't want to give them too much power, to disregard what an applicant for refugee status says? But, you do not want them to have to write magic words in every case. So what would you do? What words would you use for, to tell the reviewing courts, be careful about this. Where they don't make an explicit finding, that it was rebutted. That the presumption was rebutted. No explicit finding. Go ahead. The agency has to give the reasons that it's denying the application. I don't think there's any dispute about that. And so if the reason is that it's finding the presumption of credibility rebutted, well then it does have to say that. And I don't think it has to be, you know, I'm not sure, I think the easiest way to do that is to just say it up front. But everyone agrees, the government agrees, that it has to be clearly discernible from the opinion in some way. And I think that if the agency finds, if the board finds the presumption rebutted, well then obviously that's a finding that's entitled to defense by the court. Justice Alito? Well, I thought I was agreeing with you, but now the last thing you said gives me pause. The Ninth Circuit, I read its opinion as saying here, as saying exactly what it said, very succinctly in the other case. That unless the BIA makes an explicit finding that the applicant is not credible, it must be presumed that the applicant was credible. That, I think, is an incorrect statement of the law. And do you disagree that that is, that that's the rule that the Ninth Circuit applied in this case? I do think it's correct, but I don't, I disagree that it's not, I mean I do think that that is what the Ninth Circuit applied. Again, I want to be clear that they did not presume that the testimony was necessarily true in the sense of being accurate. But I think that what they were saying was that if the agency is silent as to credibility, then that is effectively a determination that the testimony was credible. And I think that's the work that the rebuttable presumption does. There's a difference, maybe there's a difference between silence and a requirement of an explicit statement. Must they make an explicit statement? Are they under the same obligation as the IJ? Oh, no, not, no, no. I mean, there's, because there's no similar statutory requirement. I think they have to say something that makes it clear that that's what the basis for their decision is. But we're not, you know, we're not arguing that the same explicitness requirement that is explicitly by the statute applied to the IJ applies to the board. Can the BIA's decision be read in this way? Dai had the burden of showing that he was unwilling to return to China because of fear of persecution. And we do not believe that he had that fear. He did not establish that he actually is unwilling to return to China based on the fact that he was less than truthful in less than forthright in his explanation of his family's travels and his own plans. No, I don't. I don't think so. And the reason is that what you described is very clearly an adverse credibility finding. And if you look at page 164A of the petition appendix, which is the BIA's decision, the board made very clear that it was not resting its decision on an adverse credibility finding. So I don't think that that's a way that you could read the board's decision. Justice Sotomayor? If that's not the way we can read the board's decision, but it's a permissible conclusion, why wasn't the Ninth Circuit wrong in not remanding this case? Right. And I think that really comes down to the presumption in the statute. Because the way that the presumption works, where you have the IJ silent as to credibility, and the case then goes up to the board where this presumption of credibility applied, and the board is effectively also silent, doesn't find the presumption rebutted, then I think that's the end of the matter. I think that's treated under the statutory framework as accepting the testimony as credible. And so then there's no basis in which the Court of Appeal needs to basically remand to give the agency another shot to re-adjudicate credibility. Well, the IJ here did find explicitly that Dai's explanation for his wife's return to China are inadequate, and to outweigh that they returned not because of persecution. And then he says Dai failed to prove his burden. The BIA affirmed that he had lied to the asylum officer because the truth would be perceived as inconsistent with his claims of past and feared future persecution. That, to me, suggests the conclusion that Justice Alito suggested. So if that is possible, given what they did say, why isn't an automatic remand appropriate? Well, look, to be clear, I think if the agency was sort of keeping open the remand, you know, keeping open the credibility issue as something it wasn't addressing, then maybe a remand would be appropriate. But I think if you look at page 164A of the petition appendix— But also, they said, both the IJ and the BIA said he lied about something. Well, I guess— So they didn't believe him about something, so why shouldn't we figure out what that meant? Right. I mean, so to be clear, Dai never actually lied, and they never accused him of lying. He sort of was reluctant to disclose this information. When he was sort of asked point blank whether they had come to the United States, he was up front about it. There's no dispute there. Thank you, counsel. Justice Kagan. Mr. Zimmer, I want to work off the understanding of law that you started with, which is the same as the one Justice Barrett was using, which is that this presumption of credibility, what it says is that in the absence of a finding, we are going to take the testimony of the applicant as honest, as truthful. The applicant didn't perjure himself. But then there is extraneous evidence that could come in to show that the applicant was wrong. And that distinction actually makes all the sense in a world in a statute like this, which is about a well-grounded fear of persecution, that the applicant can testify as to his fear and all the things underlying it. But then there can be other evidence which shows that that fear is not well-grounded, notwithstanding the truthfulness of what the applicant said. So let's take that as the sort of premise of what the statute does. Guy, it seems to me, could have lost in two ways in that world. One is if we understand the board to have rejected the presumption of credibility. In other words, to have decided that, in fact, Guy was lying when he said that this was the reason that he wanted asylum. And the second is, no, they accepted that he was telling the truth, but there is extraneous evidence indicating that he is wrong as to his fear of going back to China. So if you could comment on either of those two ways of saying that Guy was wrong and why you think neither of those is supportable. Right. So I certainly agree with all that. And as to the first one, sort of the idea that he was lying, I'd point the court again to page 164A, where the board made very clear that the IJ had not rested its decision on and that it was not resting its decision on an adverse credibility finding. So the agency just didn't find that he was lying. And so I don't think that's a basis on which the Court of Appeals could have affirmed or could have denied the petition for review. As to whether or not he was somehow testifying truthfully but mistaken, again, I don't think that there's anything in the record that would support that in the sense that everything pointed basically the same way. Guy gave very detailed testimony about the persecution he suffered. He submitted corroborating evidence in the form of hospital records that showed his injuries and his wife's abortion. And he showed country conditions evidence that was extremely, extremely positive. Thank you, Mr. Zimmer. Justice Gorsuch? Good morning, Mr. Zimmer. The BIA, as I read it, said that your client failed to meet his burden because his wife and daughter returned to China. That is the ground on which it rests. Why isn't that sufficient? I mean, maybe you'd argue that that's not sufficient evidence or something like that. But for purposes of our discussion here, why wouldn't that be enough to overcome credible testimony by Mr. Dye about his well-founded fears? If you don't have the testimony credible, it's like the light is green versus red. Mr. Dye thinks it's green, but there's other evidence in the form of his wife and daughter's behavior that suggests it's red. Right. So I think the answer just goes to, as the Court of Appeals explained, there's very, very significant differences in situations that he was in versus his wife and daughter, and his wife and daughter. Perhaps, and that would go to whether there's substantial evidence in the record, I suppose. Right. But it wouldn't go to anything having to do with the credibility determination issue before us, would it? No. Well, I mean, I think probably not. I mean, I don't think there's certainly nothing about that that contradicts his story or suggests that he was lying. Right. Okay, thank you. Justice Kavanaugh? Thank you. Good morning, Mr. Zimmer. Just to make sure you agree with the distinction between is the witness lying, and then the second question, regardless of whether the witness might be lying, is the witness nonetheless mistaken? And you agree that credibility in this statute only goes to the first of those two questions, is that correct? That's correct. Okay. And then going to page 164A, the BIA does say that the respondent's family voluntarily returning and his not being truthful about it is detrimental to his claim and is significant to his burden of proof. What do you say to that sentence? Well, again, I mean, so first of all, I just disagree with it as a factual matter. But I think that if you look at the – But just to interrupt, isn't that the board saying, I guess, the first of Justice Kagan's two options and how she posited it? Well, I think it possibly could be read that way, except that if you look at 164A, the board goes on to say that the immigration judge need not have made an explicit adverse credibility finding. So I think that – The very next sentence says that the respondent not being truthful about it is detrimental to his claim, which sounds like is the witness lying or credibility is, to use the statutory term. Well, truthful, but that was truthful not as to the fundamental facts on which he was basing his asylum claim. This was based on his lack of forthrightness about telling the agency that his wife and daughter had come with him and gone back to China. But I don't think that that could be read as an adverse credibility finding as to the testimony about his being detained and beaten and deprived of food and water and sleep. Last legal question, the rebuttable presumption. Do you think the board can find the presumption rebutted just on the face of the applicant's testimony without any external evidence? Do you understand the question? I do. I think it would probably be an unusual case, but I don't think there's anything that statutorily precludes that. Thank you, Mr. Zimmer. Justice Barrett. Good morning, Mr. Zimmer. So I have a question about Justice Kagan. Two ways to understand what the board has done. One, that Mr. Dye was lying, or the other, that he was telling the truth, but external circumstances show that he was mistaken. My question is about the standard of review that the board would apply in reviewing the IJ's explanation. So in the first scenario, the lying, we all agree that there would be a rebuttable presumption that he was actually telling the truth, right? If credibility, if there's no express adverse credibility determination, the board has to apply this presumption, right? Yeah. So is that better or worse? In the second, let's assume that what the board wants to conclude is that, in fact, it's reviewing what it thinks is the IJ's determination that he might be telling the truth, but he's wrong because of external reasons. What's the standard of review there? I think that would be, under the agency regulations, that would be clear error review if you look at, but I think it's HCFR 1003.1D, I believe, that would be clear error review. Okay. And my other question is a factual one. Justice Sotomayor asked the government about the hospital records. Do you want to explain what significance they have here? Yeah, absolutely. I think they have great significance. I mean, these were introduced. This was not a huge administrative record. There were only a few exhibits. This was one of the key exhibits that Dye introduced, and I think that if you look at page 101 of the Joint Appendix, I mean, the government tried to impeach Dye about the hospital records, but all it could get out of him was his testimony that you can only get them if you're admitted to the hospital and that he had never written in one of them in his life, and the idea that they would somehow be not evidence that is relevant or that could be considered by this court makes little sense. And the same with this exhaustion argument. Let me just ask you another question about the hospital records. Did the IJ say they were not going to be, that he was not going to consider them because of the authenticity questions that the government posed? No, the agency said nothing about them, and, in fact, the agency simply ignored them, which I think is actually quite mind-boggling given how prohibitive they are to Dye's burden of proof. Thank you, Mr. Zimmer. A minute to wrap up, Mr. Zimmer. Thank you, Mr. Chief Justice. I just want to emphasize in conclusion that really the government's argument depends almost entirely on the idea that Dye could somehow be credible and yet have been lying, and that just makes no sense for many of the reasons that we've already discussed in great detail. The ultimate distinction under the statute is that there's a preliminary inquiry into credibility, which is really just a question as to whether or not the agency believes that the person was honest, whether they were submitting a fraudulent claim or whether they were testifying honestly. The way in which that differs from persuasiveness only comes into play if you can have external evidence that shows that you can have honest testimony that is somehow mistaken, and there's simply none of that here. Dye gave extremely detailed testimony about the abuse the Chinese government inflicted on him for his resistance to their forced abortion of his child. He testified that the police are looking for him in China, and he testified about the continuing threats he faces. There is simply nothing that undermines that, and the agency never found that that testimony was non-credible, and we therefore urge this court to affirm. Thank you, counsel. Rebuttal, Ms. Sinzak? Thank you. I think it's important to look at the history here. Before the REAL-ID Act, the Ninth Circuit would often reverse the board by parsing its decision and trying to see if it had specifically said that the alien was not credible. And even if the board said things like the alien was not entirely credible, that wasn't enough. The Ninth Circuit would say, you didn't make an explicit adverse credibility determination, and so we're going to presume that everything in the alien's testimony was fact. And so Congress passed the REAL-ID Act. And in the REAL-ID Act, it made clear that what the Ninth Circuit had been doing was not appropriate. And it did that in part by making clear that even credible testimony isn't sufficient to establish the facts. A fact finder that is not satisfied that testimony is credible, persuasive, and contains sufficiently detailed information to satisfy the requirements can reject the testimony. So the mere absence of an explicit adverse credibility determination is not enough to dictate that the testimony of the alien has to be accepted as fact. And I think that at this point everyone has acknowledged that the Ninth Circuit has continued to apply its pre-REAL-ID Act rule. And for that reason, the decisions below have to be reversed. And in fact, looking at 1252, the only question that the Ninth Circuit should have been asking is whether any reasonable fact finder would have been compelled to reject the agency's conclusion. And I think a realistic examination of the evidence in both of these cases, even in light of the rebuttable presumption of the credibility before the board, makes very clear that a reasonable fact finder could deny relief in both cases. In Al-Faraz, we had the testimony of the alien, and the IJ dutifully summarized the alien's account. And then it pointed to multiple pieces of evidence demonstrating that the alien had committed a particularly serious crime. Even setting aside the probation report, it pointed out that he was convicted of a domestic violence offense, that the domestic violence offense involved as its elements the willful infliction of corporal injury resulting in trauma, and that he was sentenced to two years. If you look at Dai, the board pointed to multiple pieces of evidence that demonstrated that what Dai was saying just wasn't true, however you want to categorize that. And it wasn't true because his wife had returned to China voluntarily just two weeks later. It wasn't true because he said the real story was that he had come to the United States to get a better life for his daughter and to get a job. And I think if you just look at that evidence and apply Section 1252, it's very clear that the agency decisions here have to be affirmed. Thank you, Counsel. The cases are submitted.